IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIXAVIER PACHECO,

                              Petitioner,                                  OPINION and ORDER

     v.
                                                                                15-cv-178-jdp
JASON WELLS,[1]

                              Respondent.

---

Petitioner Elixavier Pacheco, an inmate confined at Racine Correctional Institution, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pacheco challenges his state-court conviction for second-degree sexual assault of a child in Milwaukee County Circuit Court Case No. 09CF5344. He challenges his conviction on the following grounds: (1) the circuit court erred in allowing the state to introduce at trial evidence that Pacheco had previously assaulted the victim, his 14-year-old half-sister, M.H.; (2) his trial lawyer was ineffective for failing to call an alibi witness who would have testified that Pacheco was not with M.H. at the time she said he assaulted her; and (3) his trial counsel was ineffective for failing to introduce evidence that Pacheco believes showed that M.H. had previously falsely accused others of assaulting her.

I previously concluded that Pacheco exhausted only one of his claims: that the circuit court erred in allowing the state to introduce at trial evidence that he had previously assaulted M.H. He failed to exhaust his ineffective assistance of counsel claims about trial counsel's failure to call an alibi witness or present M.H.'s previous false accusations of assault. *See* Dkt. 8.

---

[1] I have updated the caption to provide the identity of the warden at Pacheco's current prison.

Pacheco stated that his appellate lawyer raised his alibi-witness and false-accusation claims in a postconviction motion but then abandoned the issues on appeal. Pacheco asked this court to stay his federal habeas petition so that he could pursue claims of ineffective assistance of trial and appellate counsel in state court. In my order directing the state to respond to the petition, I told the parties to address the merits of Pacheco's claims, whether Pacheco could still exhaust his claims, whether he procedurally defaulted his claims, and whether he should be granted an exception to procedural default. *See* Dkt. 11.

Pacheco has not addressed these questions. The court gave Pacheco a series of extensions to file his brief in chief because he and his jailhouse lawyer contended that prison staff blocked their ability to work together and confiscated legal materials that the jailhouse lawyer needed to complete the brief. I twice ordered the clerk of court and respondent to provide Pacheco with the documents that he said he didn't have, but I declined to hold a hearing about the alleged problems, stating that that it was unnecessary for this case to devolve into a mini-trial over Pacheco's legal documents. Dkt. 24 and Dkt. 34, at 2 ("[T]he relevant issue in this case is Pacheco's access to the state courts, not [his jailhouse lawyer's] complaints about being harassed by prison officials. It's time for this case to move on." (citations omitted)). Even after multiple extensions and the provision of documents by the state and this court, Pacheco did not file a brief in support of his petition. I denied Pacheco's request for a fourth extension of the briefing schedule, concluding that he had forfeited the opportunity to file a brief in support. Dkt. 37. After respondent filed a brief in opposition, Pacheco did not file a brief in reply. As a result, Pacheco has not filed a substantive brief in this case. He has arguably abandoned his petition. Nonetheless, I will address his claims in this opinion.

I conclude that Pacheco fails to show that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it rejected his other-acts-evidence claim, and that his ineffective assistance of counsel claims do not meet the demanding actual-innocence standard necessary for this court to consider those procedurally defaulted claims. Accordingly, I will deny his petition.

BACKGROUND

The following facts are taken from the petition and the state court records provided by Pacheco and the state.

## A. Pretrial events

In November 2009, Pacheco was charged with second-degree sexual assault of a child under 16. The criminal complaint stated that on October 7, 2009, Pacheco sexually assaulted M.H., his half-sister who was then 14 years old. The assault occurred a home shared by M.H. and Pacheco's mother; Pacheco was not living there at the time.

The state filed a pretrial motion to introduce "other acts" evidence under Wis. Stat. § 904.04(2), seeking to allow M.H. to testify about Pacheco having sexually assaulted her in the past. Admission of this evidence forms the basis for one of Pacheco's habeas claims.

The state sought to use the other acts evidence to provide context for online chat messages between M.H. and her friend Jenna sent immediately before and after the assault at issue, to explain M.H.'s lack of resistance to Pacheco's assault, and to bolster M.H.'s credibility. Pacheco's trial counsel, Eugene Bykhovsky, objected, arguing that the evidence was unfairly prejudicial and would be used to convict Pacheco "by virtue of his offenses from the last time." Dkt. 15-9, at 6. The trial court allowed the state to introduce evidence that Pacheco had

previously sexually assaulted M.H., concluding that the evidence would be used to provide context for the events of that night and to bolster M.H.'s credibility.

Also before trial, Bykhovsky learned that in 2007 and 2009 M.H. had accused others (her stepfather, William Ramos, and a family friend, Hector Claudio) of sexually assaulting her. Police reports and records from that investigation form the basis for Pacheco's second habeas claim.

Both men denied the allegations to police at the time of M.H.'s accusations. Neither of those reports resulted in prosecution. Bykhovsky sought those records from the state, which initially declined to turn them over. By this time, Claudio wasn't interested in participating in the case, but Ramos was.

At a pretrial hearing, assistant district attorney Paul Tiffin stated that those reports were not exculpatory because they were not evidence of untruthful accusations by M.H., and so he did not need to provide them to Pacheco. Tiffin stated that his decision not to issue charges after the 2009 incident wasn't because of a recantation but rather because the state couldn't prove the case beyond a reasonable doubt. Tiffin said that notes from another assistant attorney general's investigation of the 2007 incident showed that M.H. and her mother failed to appear for meetings twice and that the case couldn't be proven beyond a reasonable doubt, but that there was no recantation—M.H. continued to insist that she was telling the truth about those incidents. After further discussion at the hearing, Tiffin agreed to turn over the records. But Bykhovsky did not use them at trial.

Pacheco's third habeas claim concerns other evidence that Bykhovsky considered using at trial but did not. Pacheco told Bykhovsky that he spent part of the day of the assault at the home of his friend, Alex Santiago, before going to M.H.'s house that night. Bykhovsky served

the state with a notice of alibi and interviewed Santiago, but ultimately did not call Santiago as a witness at trial.

## B. Trial

At trial, M.H. testified about the events on the night of the assault. She stated that Pacheco arrived at her home and stated that he was just there to eat. M.H. then went to the living room and began chatting with her friend Jenna over the internet.

The state introduced a transcript of the online chat between M.H. and Jenna. The chat, which was shown to the jury, was time-stamped with messages from 6:50 to 7:29 p.m., with a gap from 6:56 to 7:13 p.m. M.H. and Jenna talked about the distress that M.H. felt because Pacheco was at the house. Then the state asked M.H. about chat comments alluding to her having previously been assaulted by Pacheco, with M.H. then directly stating that she had been assaulted by Pacheco before:

> Q. After "IDK" [I don't know] though, you then type a single word, "scared."
>
> A. Yes.
>
> Q. Is that the word you were searching for?
>
> A. Yes.
>
> Q. Why were you scared? Your brother is just there eating?
>
> A. I was scared because he's done that before.
>
> Q. Done what before, eating?
>
> A. He's sexually assaulted me before.
>
> Q. Prior to October 7th?
>
> A. Yes.

Dkt. 15-12, at 19.

M.H. testified that the sexual assault occurred during a break in the online chat. Pacheco rubbed and put his mouth on her breasts, touched her vagina, made her perform oral sex on him, and forced sexual intercourse with her. M.H. said that she "didn't do anything" to resist the assault besides saying no to performing oral sex. Dkt. 15-12, at 22, 25. When asked why she didn't do anything to resist, M.H. said, "Because I've never done anything," and she answered yes to the state's question whether she was referring to previous assaults by Pacheco. *Id.* In discussing her saying no to oral sex, M.H. again referred to the history of assaults by Pacheco:

> Q. Did you say anything to him?
>
> A. I said, "No."
>
> Q. You said, "No"?
>
> A. Yeah.
>
> Q. To the best you remember, is the first time you had said no?
>
> A. Once when I was little I said, No. But that moment, that day, that's the first time, yeah.

*Id.* at 25.

M.H. testified that after the assault she took a shower and she then resumed chatting with Jenna. M.H. told Jenna about the assault, typing "I had to"; "I don't know how to say no to him"; "he did it"; "he, umm"; and "touched me?," all referring to the sexual assault that had taken place. *Id.* at 31–34. M.H. also referred to Pacheco's history of assaulting her:

> Q. Your friend sent you a message asking the question, "What are you scared of?" And you responded, "Jenna, he did it." I read correctly what's the chat message, right?
>
> A. Yes.
>
> Q. [Jenna] asks the question, "Did what?" You responded with three periods. You then sent another message, "You can't tell

> anyone." You sent a message, "Please," question mark. What did all that mean?
>
> A. [Jenna] knows that he sexually assaulted me before.

*Id.* at 33.

> Q. Then you responded, "Jenna, I've been doing this since I was like six." I read that correctly?
>
> A. Yes.
>
> Q. What is the "this" that you're referring to?
>
> A. Putting up with him sexually assaulting me.

*Id.* at 36.

M.H. also testified that she typed "I thought he changed"; "You don't get it. I don't have a choice"; "I don't know how to stop him"; and "he knows that." *Id.* at 34–37. M.H. typed "I'm still scared," and explained that she meant, "All those years and I can't do anything." *Id.* at 37.

M.H. also told Jenna that M.H. promised Pacheco that she wouldn't tell anyone about the assault. Ten days later, M.H. referred to the assault while arguing with another of her brothers. M.H.'s mother then called the police.

On cross-examination, Bykhovsky impeached M.H. with her statement to police that Pacheco came to her house at 8:00, which was inconsistent wither her trial testimony that he arrived before 7:00 p.m.

Pacheco testified in his own defense that he went to M.H.'s home to get food that night. He did not explain what time he got to the house. He admitted that he had sexually assaulted M.H. in the past, but he stated that he did not sexually assault her that night, as she claimed.

The court instructed the jury that it heard evidence that Pacheco had previously had sexual contact with M.H., and that the evidence was offered "because it explains or offers context to statements contained in the Internet chat between [M.H. and Jenna]." Dkt. 15-13, at 66. The court instructed that the jury could not consider that evidence to conclude that Pacheco "has a certain character or certain character trait and that [Pacheco] acted in conformity with the trait or character with respect to the offense charged in this case" or to conclude that Pacheco "is a bad person and for that reason is guilty of the offense charged." *Id.* at 66–67. The jury returned a guilty verdict.

## C. Postconviction proceedings

Pacheco's appointed postconviction counsel, Dustin Haskell, filed a postconviction motion seeking a new trial based on two claims of ineffective assistance of trial counsel—that Attorney Bykhovsky was ineffective for (1) failing to introduce evidence of M.H.'s prior false allegations of sexual assault; and (2) choosing not to call Santiago as an alibi witness. The court summarily denied Pacheco's postconviction motion on the ground regarding M.H.'s prior false allegations of sexual assault and set a *Machner*[2] hearing on the ground regarding alibi witness Santiago.

At the hearing, Bykhovsky testified that Pacheco told him that he was with Santiago before he went to M.H.'s house. Bykhovsky hired a private investigator who met with Santiago twice before trial at the House of Correction where Santiago was being held on a potential

---

[2] The term "*Machner* hearing" comes from a Wisconsin Court of Appeals decision, *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), which allows an evidentiary hearing when a criminal defendant's trial counsel is challenged for ineffective assistance. At the hearing, the trial counsel testifies to their reasoning on the challenged action or inaction. *Id.* at 908–09.

parole revocation hold. Bykhovsky also met with Santiago and he issued a subpoena for Santiago's possible testimony at trial.

But Bykhovsky explained that he chose not to call Santiago because Santiago "wasn't very clear on his recollection" about what happened the day of the assault. Dkt. 15-15, at 10. Santiago told Bykhovsky that he and Pacheco had been hanging out all day, smoking marijuana at someone named "Taboo's" house before Pacheco left to go to his mother's house at about 8:00 p.m. But Bykhovsky testified that Santiago "wasn't able to precisely state any times" about that night. *Id.* at 11.

Bykhovsky testified that in discussing trial strategy with Pacheco, Bykhovsky did not think that calling Santiago was necessary because he could already impeach M.H. about her inconsistent statements about the specific time that Pacheco came to her house. He also thought that Santiago had "questionable credibility" because of Santiago's demeanor during interviews, and because Santiago's recollection of what time Pacheco left his house varied during interviews. *Id.* at 13. He also thought that Santiago's admission that he and Pacheco "were pretty much smoking weed the whole day" would undermine Pacheco's own credibility. *Id.* at 14.

Santiago then testified, stating that he and Pacheco were longtime friends. Santiago stated that Pacheco came to his house at around 10:00 or 10:30 a.m. and they spent time at Santiago's home before going to Taboo's house where they "smoked marijuana and [] chilled" for "around two hours, two and half hours." *Id.* at 22. He said that they left Taboo's house at about 8:30 or 8:45 p.m. and that Pacheco came back to Santiago's house until around 9:00 or 9:30, when Pacheco left.

On cross-examination, the state impeached Santiago with statements from his police interview in which his timeline for the events differed from his testimony at the postconviction hearing. In particular, Santiago told the officer that he and Pacheco left Taboo's house at 8:00 p.m., 45 minutes earlier than he stated at the hearing. On cross-examination, Santiago stated that he knew that Pacheco left his house between 9:00 and 9:30 p.m. because he looked at a clock. When asked what the clock said, Santiago responded "It said at 9, 9:30, 9:10–9:10, around there." *Id.* at 32. After being pressed by the state, Pacheco said the clock said 9:00.

The circuit court ruled that Attorney Bykhovsky did not perform deficiently, and, even if he had, Pacheco's defense at trial was not prejudiced. The court described Santiago as "an incredibly poor witness" for the defense because of his inconsistent hearing testimony and five prior convictions, and because Santiago "would have admitted that he's buddies with the defendant" and "would have admitted that he spent all or most of the day smoking weed." *Id.* at 47–48. The court stated that Santiago's proffered testimony that he remembered "exactly" that Pacheco left his house at 9:00 would "strike[] a jury as completely incredible because juries know that no one remembers what they were doing a year earlier or six months earlier to the minute." *Id.* at 48. The court stated that Santiago was "lying through his teeth." *Id.*

**D. Appeal**

Still represented by Haskell, Pacheco raised only one ground on appeal: that the trial court erred in admitting evidence that Pacheco had previously assaulted M.H. The court of appeals affirmed the conviction. *State v. Pacheco*, 2013 WI App 105, 349 Wis. 2d 788, 837 N.W.2d 178. The court compared this case favorably to the Wisconsin Supreme Court's decision in *State v. Marinez*, 2011 WI 12, 331 Wis. 2d 568, 797 N.W.2d 399, a child-sexual-

assault prosecution in which the court allowed other acts evidence in the form of the child victim's complete videotaped forensic interview, which included statements that the defendant had previously burned the victim's hands with hot water.

The court of appeals concluded that the other acts evidence was admissible here "for the proper purpose of providing context, including providing a more complete background of the case and establishing M.H.'s credibility," and that M.H.'s credibility was "central to this case." *Pacheco*, 2013 WI App 105, ¶¶ 19–20. The court concluded that the probative value of the evidence outweighed the danger of unfair prejudice because the probative value was "extremely high, in that it explained M.H.'s otherwise inexplicable passive submission to Pacheco's demands for sexual contact with her, and provided a full context for the online chat M.H. had with her friend immediately before and after the sexual assault," and because the jury was given a limiting instruction on the proper use of the evidence. *Id.*, ¶ 24.

Pacheco filed a petition for review in the Wisconsin Supreme Court, which was denied.


ANALYSIS

**A.  Unexhausted ineffective assistance of counsel claims**

**1.  Pacheco's request for stay and abeyance**

An initial question is whether the court should grant Pacheco's request to stay the petition and hold it in abeyance while Pacheco exhausts his ineffective assistance of counsel claims about an alibi witness and M.H.'s previous false accusations. As I have previously explained to Pacheco, such a stay is warranted only where the petitioner can demonstrate (1) that he had good cause for his failure to exhaust; (2) his unexhausted claims are potentially

meritorious; and (3) he has not engaged in abusive litigation tactics or intentional delay. *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

A stay is not warranted in this case because Pacheco has shown a complete lack of diligence in pursuing a state-court remedy for his unexhausted ineffective assistance of counsel claims. Pacheco could have pursued his claims about the failure of his counsel to fully litigate his claims about ineffectiveness of trial counsel at both the postconviction and appellate stages by filing petitions in the circuit court and the court of appeals. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677–82; 556 N.W. 2d 136, 137–39 (Ct. App. 1996) (describing procedure for challenging effectiveness of postconviction counsel in circuit court); *State v. Knight*, 168 Wis. 2d 509, 520–21, 484 N.W. 2d 540, 544–45 (1992) (describing procedure for challenging effectiveness of appellate counsel in the court of appeals). But my own review of online Wisconsin court system records shows that Pacheco has not filed a petition in either state court during the long pendency of this federal habeas case despite me previously telling Pacheco that such a petition would be necessary to exhaust his claims. *See* Dkt. 11, at 2. And it's virtually certain that the state courts would not allow Pacheco to file a state-court petition now, so long after the 2013 rulings denying his appeal. *State ex rel. Wren v. Richardson*, 2019 WI 110, ¶ 42, 389 Wis. 2d 516, 936 N.W.2d 587 (applying laches to *Knight* petition filed about ten years after petitioner's conviction); *State ex rel. Washington v. State*, 2012 WI App 74, ¶ 22, 343 Wis. 2d 434, 819 N.W.2d 305 (applying laches to *Knight* petition filed five and a half years after petitioner because aware of appellate counsel's failure to file an appeal). So there is no reason to stay this case for further state-court proceedings.

### 2. Procedural default

Pacheco's failure to exhaust his ineffective assistance of counsel claims means that he has procedurally defaulted those claims. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). In very rare circumstances, a federal court may excuse a petitioner's procedural default and consider the claims anyway. One such circumstance would be for Pacheco to show cause and prejudice for his failure to exhaust his claims, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). That requires showing that there was "some objective factor external to the defense" that prevented him from pursuing his claim in state court. *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003). Other than stating earlier in the case that he had not received material from his appellate counsel and that prison staff were hampering his efforts to work with his jailhouse lawyer, Pacheco does not attempt to make this showing, and I conclude that he fails to present a persuasive reason for his failure to file a petition in the state courts similar to his petition in this court.

Courts can also excuse a petitioner's procedural default if the petitioner can show that dismissal would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Pacheco says that he is actually innocent of the sexual assault charge.[3] The actual-innocence gateway to excusing procedural default "is demanding and permits review only in the 'extraordinary' case." *Blackmon v. Williams*, 823 F.3d 1088, 1100–01 (7th Cir. 2016). To qualify for this narrow exception, Pacheco "must have 'new reliable evidence—whether it be

---

[3] In his petition, Pacheco raised a fourth claim that he was actually innocent of the sexual assault. But the United States Supreme Court has not yet recognized a prisoner's right to bring a standalone claim of actual innocence. *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)). As I stated in screening Pacheco's petition, his actual-innocence claim is essentially a restatement of his ineffective assistance of counsel claims. Dkt. 8, at 1.

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 324)); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim."). The evidence of innocence must be so strong that "in light of the new evidence . . . more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). To be "new," the evidence does not need to be "newly discovered," but it must not have been presented at trial. *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015).

Pacheco's proposed new evidence is not strong enough to meet this exacting standard so his claims based on new evidence are doomed by procedural default. His ineffective assistance of counsel claims regarding all stages of his case—trial, postconviction, and appeal—boil down to his contentions that trial counsel should have (1) called Alex Santiago as an alibi witness; and (2) introduced evidence regarding M.H.'s previous false accusations of sexual assault.

At Pacheco's *Machner* hearing, both Pacheco's trial counsel and the circuit court judge persuasively explained why Santiago's testimony wouldn't have been particularly helpful to Pacheco. Pacheco's alibi defense wasn't that strong to begin with. He admitted that he was indeed at M.H.'s house that night, but he didn't actually testify about the time he arrived at M.H.'s house. On cross-examination, defense counsel had already gotten M.H. to admit that she told an investigating officer that Pacheco arrived at her house at 8:00 p.m., a time inconsistent with her direct testimony that the assault occurred at around 7:00 p.m. and the

14

chat records supporting that timeframe. Counsel could have elicited Santiago's testimony to bolster the defense theory that Pacheco arrived at M.H.'s house later, but that wouldn't rule out that the assault occurred later, when Pacheco admitted that he was there.

New testimony from an eyewitness that simply contradicts another eyewitness is generally not the type of evidence that can establish actual innocence. *See Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010); *see also Hayes*, 403 F.3d at 937 (affidavits of six alibi witnesses not called at trial insufficient to show actual innocence because government had presented six witnesses stating petitioner committed the crime). Testimony from friends and family of the accused is significantly less probative than testimony from witnesses with no motive to lie. *House*, 547 U.S. at 552. And Santiago had substantial credibility problems. Santiago gave inconsistent accounts regarding the timing of the day's events to Pacheco's counsel, an investigating police officer, and to the court in his postconviction-motion hearing testimony. Santiago has multiple convictions or juvenile adjudications, which would generally undermine his credibility. His statements that he and Pacheco smoked marijuana throughout the day likely would undermine his credibility concerning his ability to recount the exact timing of events more than a year after the fact. And Santiago's hearing testimony that he knew that Pacheco was at his house until 9:00 p.m. because he remembered seeing a clock stating 9:00 is implausible, particularly given the shakiness of his recollection when previously recounting the events to counsel and to an officer. This partial alibi testimony of questionable credibility is not of the character necessary to support a defendant's actual-innocence argument.

What Pacheco calls evidence of M.H.'s prior false accusations of sexual assault also fails to meet this standard. Although I must conduct the actual-innocence analysis of M.H.'s prior accusations "without regard to whether it would necessarily be admitted under 'rules of

admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327–28), application of the Wisconsin admissibility rules for such evidence shows why that testimony would have only limited usefulness to Pacheco.

The circuit court denied Pacheco's postconviction motion on this issue, stating that M.H.'s prior accusation wouldn't have been admitted under Wisconsin's rape shield law, Wis. Stat. § 972.11(2)(b). One exception to that law's general prohibition on evidence about a complaining witness's prior sexual conduct is "[e]vidence of prior untruthful allegations of sexual assault made by the complaining witness." § 972.11(2)(b)3. But to allow such evidence to be presented, "the circuit court must first conclude from the proffered evidence that a jury could reasonably find that the complainant made prior untruthful allegations of sexual assault." *State v. Ringer*, 2010 WI 69, ¶ 31, 326 Wis. 2d 351, 785 N.W.2d 448. A court should not admit prior accusations if a jury "would have to speculate . . . to determine that [the complaining witness] was untruthful." *Id.*, ¶ 41.

The court denied Pacheco's postconviction motion on this issue in part because there wasn't much support for M.H.'s accusations actually being false. Postconviction counsel noted that the alleged perpetrators of the previous assaults denied the accusations and that neither man was charged. But under *Ringer*, those factors are not enough to elevate an assertion of untruthfulness above that of mere speculation. *Id.*, ¶¶ 39–40. The rationale underlying these standards is sensible: many accused perpetrators deny the crimes of which they are accused, and many considerations beyond the truthfulness of the allegations go into a district attorney's decision whether to prosecute. Additionally, in the present case, M.H. did not recant her prior accusations; she continued to insist that they were true. And Pacheco admitted that he had assaulted M.H. in the past, which cuts against the conclusion that M.H. fabricated every

accusation she made. Even now, Pacheco has not provided other evidence to support an inference that the accusations were indeed false.

In summary, Pacheco wants this court to consider M.H.'s prior accusations when a jury could only speculate whether they were actually untrue. That exceedingly thin evidence, even when taken in conjunction with Santiago's testimony, simply is not the kind of striking new evidence contemplated in *Schlup* that would be necessary to show that Pacheco was actually innocent of the offense. So I cannot excuse Pacheco's procedural default and go on to consider the merits of his ineffective assistance of counsel claims.

## B. Exhausted other-acts-evidence claim

I turn to the merits of the claim that Pacheco exhausted in the state courts: that the trial court erred in admitting other acts evidence showing that Pacheco had previously sexually assaulted M.H. This is a challenge to the state court system's rulings on an issue of law. Under 28 U.S.C. § 2254(d)(1), this court may grant a state prisoner's petition for habeas corpus when the state court's adjudication of the merits of a claim for relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

This standard places a high burden on the petitioner. *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 572 U.S. 415, 419 (2014). "[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The relevant state-court decision for this court's review is the opinion issued by the Wisconsin Court of Appeals, because it was the last state court to review the merits of Pacheco's claim. *Stevens v. McBride*, 489 F.3d 883, 902 n.2 (7th Cir. 2007).

As respondent points out, Pacheco perhaps procedurally defaulted this claim despite exhausting his remedies in state court because he did not present a federal-law theory in his direct appeal. Instead, Pacheco focused his argument on the theory that admission of this evidence violated Wisconsin's other acts evidentiary rule, Wis. Stat. § 904.04(2). The interpretation of state evidentiary law is generally beyond the scope of federal habeas review. *See Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Pacheco's state-court briefing and the court of appeals' decision explicitly addressed the Wisconsin evidentiary issue, not the constitutional due process theory associated with this type of claim. *See Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (State court evidentiary rulings implicate the Due Process Clause only when "evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice[.]'" (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990))).

But the rule that a petitioner must present a federal claim to the state courts "does not require hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). In determining whether a habeas petitioner has fairly presented a constitutional issue in state court, I may consider among other factors "whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right." *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). On at least one occasion in similar

circumstances, the United States District Court for the Eastern District of Wisconsin has concluded that a habeas petitioner fairly presented a due process claim regarding the admission of other acts evidence of a petitioner's prior sexual misconduct because the petitioner had relied on Wisconsin cases articulating due process principles. *Sauve v. Hepp*, No. 18-CV-932-JPS, 2019 WL 6327199, at *4–5 (E.D. Wis. Nov. 26, 2019) (noting that petitioner had discussed *Marinez*, 2011 WI 12, ¶ 51 (evaluating whether inclusion of other acts evidence "so infect[ed] the trial with unfairness as to deny Marinez due process" (internal quotations omitted)); *State v. Hunt*, 2003 WI 81, ¶ 34, 263 Wis. 2d 1, 666 N.W.2d 771 (considering whether trial court "used a demonstrated rational process"); *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30, 36 (1998) (same). Pacheco and the court of appeals discussed the same underlying cases in considering his other-acts-evidence claim.

Nonetheless, even if I follow the approach in *Sauve* and conclude that Pacheco fairly presented a federal due process claim to the state courts, that claim fails on the merits. Petitioners raising this type of claim have a very high standard to meet. *See, e.g.*, *Watkins v. Meloy*, 95 F.3d 4, 6–7 (7th Cir. 1996) ("[W]hen the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process, and the appeal almost always fails."). The Court of Appeals for the Seventh Circuit has framed the due process standard in the context of evidentiary questions by asking whether "the incorrect evidentiary ruling was so prejudicial that it violated [the petitioner's] due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001).

No United States Supreme Court case has yet held that the admission of evidence of other crimes violates a defendant's due process rights even if, unlike here, it is admitted

specifically to show the propensity of the defendant to commit crimes. *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Moreover, federal practice shows that in sexual-assault cases, the use of similar other acts evidence does not violate the Due Process Clause. Although propensity evidence is ordinarily excluded under the rules of evidence, in federal law there is an explicit exception to that principle: Federal Rule of Evidence 413 ("Similar Crimes in Sexual-Assault Cases") allows the use of "evidence that the defendant committed any other sexual assault. . . . [and such] evidence may be considered on any matter to which it is relevant."[4] Such evidence is still subject to other evidentiary rules; for instance, it could still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice.

Accordingly, courts considering similar circumstances in habeas cases and federal criminal prosecutions have concluded that the admission of prior sexual misconduct does not violate the Due Process Clause. *See United States v. Julian*, 427 F.3d 471, 486–87 (7th Cir. 2005) (rejecting due process argument regarding admission of previous sexual assault by defendant, stating, "Congress enacted Rule 413 because sexual assault cases, especially cases involving victims who are juveniles, often raise unique questions regarding the credibility of the victims which render a defendant's prior conduct especially probative."); *Sauve*, 2019 WL

---

[4] Years after Pacheco's conviction, Wisconsin's character-evidence rule was similarly amended. *See* 2013 Wis. Act 362, § 38. The current version states in relevant part that "[in a prosecution for a serious sex offense against a child], evidence of any similar acts by the accused is admissible, and is admissible without regard to whether the victim of the crime that is the subject of the proceeding is the same as the victim of the similar act." Wis. Stat. § 904.04(2)(b)1.

6327199, at *6 (denying habeas due process claim concerning introduction of evidence of defendant's prior similar acts of sexually explicit text messages); *Wheeler v. Pollard*, No. 13-CV-1163, 2020 WL 2748130, at *6 (E.D. Wis. May 27, 2020) (denying habeas claim concerning admission of defendant's previous sexual abuse of victim).

Here, the court of appeals concluded that the admission of Pacheco's prior assaults of M.H. were probative to provide context for the online chat, establish M.H.'s credibility, and explain M.H.'s passivity to Pacheco's assault. And it noted that unfair prejudice from the other acts evidence was mitigated by the court's limiting instruction to the jury. Because of the wide latitude that courts have to allow other acts evidence in sexual assault cases like Pacheco's, I cannot conclude that the court of appeals' decision unreasonably applied federal law concerning Pacheco's due process rights. I will deny Pacheco's habeas petition on this ground and I will dismiss the case.

## C.  Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. Because reasonable jurists would not debate whether Pacheco should be granted a

habeas petition, I will not issue him a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

ORDER

IT IS ORDERED that:

1. The petition for writ of habeas corpus filed by Elixavier Pacheco, Dkt. 1, is DENIED.

2. Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered March 14, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge